**AFFIRMED and Opinion Filed July 8, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00043-CV

## IN THE INTEREST OF J.C., A CHILD

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-20-00975-X**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Mother and Father separately appeal the trial court's final order appointing them joint possessory conservators with limited supervised access to their daughter, J.C. Mother and Father's court-appointed appellate counsel have each filed a brief stating the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738 (1967). Because we find no meritorious issues in our review of the record, we affirm the trial court's judgment.

## Background

On November 24, 2020, the Department of Family and Protective Services took J.C., a three-month-old female, into its possession due to a priority one referral regarding Mother's physical neglect of J.C. Mother had taken J.C. to the hospital

claiming the child had sickle cell anemia and epilepsy and was running abnormal fevers fluctuating from "103 degrees to 30 degrees." Mother was unable to provide consistent information regarding J.C.'s medical history or feedings. Hospital personnel ruled out sickle cell anemia and epilepsy; however, J.C. was diagnosed with non-organic failure to thrive due to malnourishment and was admitted to the hospital for medical intervention and supervision.

While at the hospital, Mother did not properly respond to J.C. when she was crying for extended periods of time, did not properly support her head when she picked her up, was too rough changing diapers, and did not feed J.C. without prompting by hospital staff. Even when prompted, Mother did not know how to prepare J.C.'s bottle. Hospital staff reported that Mother also brought in two beers, wore her hospital gown in such a way that her front area was completely exposed, and threw things into other people's rooms. Mother did not seem to understand the problem with J.C. losing three pounds in one month, and there was concern Mother might have an intellectual delay.

The Department filed a petition seeking protection and conservatorship of J.C. and termination of Mother and Father's parental rights. The Department requested immediate appointment as temporary sole managing conservator. The trial court granted an ex parte order for emergency care, finding that there was a continuing danger to the physical health or safety of J.C. if returned to Mother, and appointed the Department as temporary managing conservator.

Mother and Father each filed a counterpetition seeking to be appointed managing conservators. Under temporary orders, J.C. was placed into fictive kinship care with a family friend recommended by Mother. Mother and Father were ordered to complete a parenting program, psychiatric assessment, psychological assessment, and individual counseling. While the case was pending, Father was arrested for indecent exposure with a child other than J.C., and his bond conditions prohibited him from having contact with anyone under the age of eighteen.

At the time of trial, J.C. was fifteen months old, and the Department was no longer seeking termination of Mother and Father's parental rights. Instead, the Department sought for the family friend, who J.C. had been living with for almost a year, to be named managing conservator and for Mother and Father to be named joint possessory conservators with supervised access. Mother no longer wanted the family friend to keep J.C. because she had issues with her canceling visitation. She sought to be appointed managing conservator or, in the alternative, sought her cousin to be appointed. Father's counsel agreed with Mother's requested relief.

Although Mother testified that she learned a lot from her parenting classes and learned to ask for help, the evidence showed that she was unable to retain the information she learned and unable to care for J.C. on her own. Her parenting coach would consistently have to remind her of what to do. Mother's parenting coach believed Mother should have visitation with her child "because she loves her baby"

but was not sure she could care for the child by herself. The Department's caseworker and the CASA advocate agreed.

Dr. Myrna Dartson, a licensed psychologist, testified that Mother had a major depressive order without psychotic features, had a limited support system, and had a full-scale IQ of 67, which falls within the extremely low range. Dr. Dartson explained that Mother was not necessarily operating at a deficit, but she seemed to perform better with paper and pencil than when the information was presented orally. Dr. Dartson recommended J.C. remain in foster care until the Department deemed reunification safe and appropriate.

The evidence also showed that Mother tested positive for methamphetamine and cocaine while the case was pending and that she told the Department she was unsure why she would be positive but thought it might be the medication she took for bipolar disorder. Other than a drug education class, Mother had substantially completed all her required services.

As to Mother's request for J.C. to alternatively be placed with her cousin, Mother testified that she knew the family friend she initially recommended for J.C.'s placement only two weeks before recommending her and picked her because she had taken in other children and did not work, a requirement she was told had to be met. Her cousin did not know why Mother had failed to initially list her as a placement option; she, along with other family members, had been ready and willing to take J.C. She agreed J.C. should not be uprooted from a home she had been in for

almost a year as long as there were no issues with visitation. She was willing to supervise Mother's visits with J.C. even if J.C. was not placed with her. The Department's caseworker testified she did not have any issues allowing J.C. to go to Mother's cousin, who was approved and who Mother would prefer.

The trial court found it would not be in J.C.'s best interest to appoint a parent as a managing conservator because such appointment would endanger the child's physical health or emotional development. The trial court appointed the family friend, with whom J.C. had previously been placed, as permanent managing conservator and appointed Mother and Father as joint permanent possessory conservators. The Department was dismissed as temporary managing conservator.

The trial court further found that deviation from the standard possession order was in J.C.'s best interest and that unsupervised access would endanger the physical health or safety of the child. The trial court ordered that Mother would have visitation as arranged and agreed with the managing conservator, or failing agreement, on the 1st, 3rd, and 5th Sundays of each month from 2 p.m. until 5 p.m. and certain times on the child's birthday as well as holidays. The order allowed Mother's cousin to supervise visits. The trial court ordered Father to have visitation as arranged and agreed with the managing conservator if contact was no longer prohibited by his criminal court orders.

## *Anders*

Mother and Father appealed and each of their court-appointed appellate attorneys filed an *Anders* brief. Counsel provided Mother and Father a copy of the respective brief filed on their behalf, and each were advised about their right to examine the record and file their own response. Additionally, this Court separately provided Mother and Father a copy of the respective brief filed by counsel and notified them about their right to examine the appellate record and file a pro se response. Father did not file such a response. Mother filed a motion requesting a copy of the appellate record, which we granted. This Court ordered Mother to file a response to her attorney's *Anders* brief by June 1, 2022. Mother did not file a response; however, the order we sent her was returned as "not deliverable as addressed" and "unable to forward." This Court was able to make contact with Mother by phone and issued a new order allowing Mother to file a response by June 27, 2022. The order expressly provided that no extensions would be granted because this is an accelerated appeal in a child protection case with an expeditated date of disposition. *See* TEX. R. APP. P. 28.4; TEX. R. JUD. ADMIN. 6.2(a). As of this date, we have not received a response from Mother.

The procedures outlined in *Anders* apply in termination of parental rights cases, including those in which termination is sought but not granted. *In re J.L.B.*, No. 05-20-00526-CV, 2020 WL 6054340, at *1 (Tex. App.—Dallas Oct. 14, 2020, no pet.) (mem. op.); *In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet.

–6–

denied).  In reviewing *Anders* briefs, we do not review the merits of each claim raised in the brief or in a pro se response.  *In re D.D.*, 279 S.W.3d at 850 (citing *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005)).  Instead, we determine whether there are any arguable grounds for reversal, and if there are, we remand the case for new counsel to be appointed.  *Id.*

In their *Anders* briefs, Mother and Father's appellate counsel separately demonstrate they reviewed the record and concluded the appeal was without merit and frivolous.  *See Anders*, 386 U.S. at 744.  We independently reviewed the record and counsels' briefs, and we agree the appeal is frivolous and without merit.  We find nothing in the record that could arguably support the appeal.

## Conclusion

We affirm the trial court's judgment appointing Mother and Father as joint possessory conservators.

/Craig Smith/
CRAIG SMITH
JUSTICE

220043F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.C., A CHILD

No. 05-22-00043-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas Trial Court Cause No. JC-20-00975-X.
Opinion delivered by Justice Smith. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of July 2022.